IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

FILED

2015 APR 28   PM 3: 51

CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS

BY_____AD

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | |
| | § | |
| | § | |
| V. | § | CAUSE NO. A-14-CR-388-LY |
| | § | |
| CHARLES KLEINERT | § | |
| | § | |

## MEMORANDUM OPINION AND ORDER
## REGARDING REMOVAL JURISDICTION

Before the court is the above styled and numbered action.  Defendant Charles Kleinert's

Notice of Removal filed December 31, 2014 (Clerk's Document No. 1) seeks to remove the State

of Texas's prosecution of an indictment that charges Kleinert with manslaughter for recklessly

causing the death of Larry Jackson, Jr., on July 26, 2013, from the 167th Judicial District Court of

Travis County, Texas, to this court.  *See* 28 U.S.C. § 1442(a)(1) ("Section 1442(a)(1)" or "Federal

Officer Removal statute"); Tex. Pen. Code Ann. § 19.04 (West 2011).   Having declined to

summarily remand this action to state court, this court held an evidentiary hearing on April 10, 2014,

at which Kleinert appeared, and all parties were represented by counsel. *See* 28 U.S.C. § 1455(b)(5)

(if district court does not order summary remand, it shall order evidentiary hearing and shall "make

such disposition of the prosecution as justice shall require").  Having considered Kleinert's Pre-

Hearing Brief in Support of Removal filed April 8, 2015 (Clerk's Document No. 30), the United

States Attorney's Office's Court Advisory filed April 8, 2015 (Clerk's Document No. 31), the

parties' Joint Stipulation of Facts filed April 9, 2015 (Clerk's Document No. 34), the case file, the

testimony, exhibits, and arguments of counsel presented at the April 10 evidentiary hearing, and the

applicable law, the court concludes that Kleinert has satisfied the requirements for federal-officer

removal jurisdiction and this court has jurisdiction over the State of Texas's prosecution of the

indictment charging Kleinert with manslaughter.

**Facts**

On July 26, 2013, Kleinert, an Austin Police Detective, was serving on a full-time assignment

to the Central Texas Violent Crimes Task Force ("task force") of the Federal Bureau of Investigation

(FBI).[1] Kleinert, having been deputized by both the FBI and the United States Marshals Service, was

a "Special Federal Officer/Special Deputy-US Marshal." Kleinert maintained an office at the FBI's

---

[1] The Austin Police Department and the FBI executed a Memorandum of Understanding that has as its purpose:

> to delineate the responsibilities of the [task force] participants, maximize inter-agency cooperation, and formalize relationships between the participating agencies for policy guidance, planning, training, public and media relations. This [memorandum] is not intended, and should not be construed, to create any right or benefit, substantive or procedural, enforceable at law or otherwise by any third party against the parties, the United States, or the officers, employees, agents, or other associated personnel thereof.

Additionally, the memorandum recites that the mission of the task force is:

> to identify and target for prosecution organized crime groups and/or individuals responsible for Violent Incident Crimes, to include; Aggravated Robbery, both personal and commercial; Carjackings; Kidnappings; and Extortions. Through an aggressive utilization of the Unlawful flight To Avoid Prosecution [] Statutes, [the task force] will enhance the effectiveness of interstate, multi-jurisdictional fugitive investigations of major violent offenders. The [task force] will enhance the effectiveness of Federal/State/Local law enforcement resources through a well coordinated initiative seeking the most effective investigative/prosecutive avenues by which to convict and incarcerate dangerous offenders.

Austin headquarters, was issued FBI equipment, and had access to all nationwide FBI computer files.

As a member of the task force and as a special federal officer, Kleinert was authorized to:

> (1) carry firearms; (2) execute and serve search warrants, arrest warrants administrative inspection warrants, subpenas, and summones issued under the authority of the United States; (3) make arrests without warrant (A) for any offense against the United States committed in your presence, or (B) for any felony, cognizable under the laws of the United States, if you have probable cause to believe that the person arrested has committed or is committing a felony; (4) make seizures of property pursuant to the provisions of this subchapter; and (5) perform such other law enforcement duties as the Attorney General may designate.

Kleinert's duties included, but were not limited to, investigating bank robberies.

On the morning of July 26, two tellers at the Benchmark Bank located on 35th Street in Austin, Texas, were robbed at gunpoint. The task force began investigating the robbery soon after it was reported. That afternoon, as part of the task force's ongoing investigation, Kleinert went to the bank to retrieve a copy of the bank's morning surveillance video. When Kleinert arrived, the bank was closed. A sign was taped to the bank's front door, informing customers that the bank was temporarily closed and would reopen as soon as possible. The bank did not reopen that day. The bank's manager, Kimberly Menge and her supervisor, Sheila Bostik, met Kleinert at the bank. The three knew each other, as Kleinert had conducted robbery-training sessions attended by Menge and Bostick. The three went to Menge's office and discussed the morning's robbery, while Menge downloaded the bank's morning surveillance video on her computer for Kleinert.

During their discussion, through the window of Menge's office, which was immediately to the right of the bank's front door, they observed a man come to the front door and attempt to enter

the bank.[2] Neither Menge nor Bostick knew the man, who later was determined to be Larry Jackson, Jr. Jackson left the bank on foot, but soon returned. Based on the bank's surveillance video, it appears that when Jackson left the front door, he walked around the bank building, and returned to the front door. On Jackson's return visit, he pulled several times on the locked front door. Bostick went to the front door to see what business Jackson wanted to conduct at the bank. As the front door of the bank was nearby Menge's office, she was able to hear much of Bostick's conversation with Jackson. When Bostick opened the front door, Jackson told her that he was a customer and identified himself as William Majors. Bostick asked Jackson to wait outside, which he did, and Bostick returned to Menge's office. Menge immediately told Kleinert that she knew the true William Majors, who was a personal friend of the bank's president, and Jackson was not Majors. Bostick asked Kleinert to step outside and speak with Jackson.

The parties stipulate that the bank's afternoon surveillance video shows Kleinert opening the front door, leaving the bank at 4:07:06 p.m., and walking over to speak with Jackson. Kleinert directed Jackson to sit down on a concrete planter ledge just outside of Menge's office window, and Kleinert continued talking with Jackson. At 4:08:52 p.m., Jackson suddenly stood up and ran away from Kleinert. Kleinert ran after Jackson. As she had observed all of Jackson and Kleinert's interactions through her office window, Menge called 9-1-1, reporting that Kleinert was running after Jackson. Menge's call was noted at 4:07:27 p.m. by the Austin emergency call center. Surveillance video from Seton Shoal Creek Hospital, located near the bank, from 4:07:31 p.m. to 4:07:50 p.m.,

---

[2] At the hearing, the defense presented a composite video without audio that included time-stamped and sequenced video excerpts from the bank, a nearby Randall's grocery store, and Seton Shoal Creek Hospital's surveillance cameras. The times reflected on the excerpts and referenced here are the times displayed on each of the individual surveillance videos. Thus, the composite video is not exactly time-sequenced.

shows Jackson running and Kleinert running after Jackson. An Austin emergency dispatch call report includes an entry that Kleinert called at 4:10:52 p.m. to report the shooting of Jackson. Kleinert's handgun fired the bullet that killed Jackson.

Kleinert presented surveillance video from a Randall's grocery store located directly across the street from the bank. The grocery store's video is from the time period immediately before Jackson's first appearance at the bank. The grocery store's video shows Jackson and an accomplice known as Ikee purchasing super glue. There was testimony that super glue applied to fingertips prevents the leaving of any finger prints. Jackson's fingertips were covered in super glue.

By affidavit, Kleinert states, "As a Task Force officer, I believed that I had the legal authority to detain and make a warrantless arrest of any person who committed an offense against the laws of the United States in my presence, or of any person whom I had probable cause to believe had committed or was committing a felony under federal law." Further, Kleinert avers, "During the course of attempting to effect that arrest, my weapon accidentally discharged. My sole purpose in my actions involving the pursuit and attempted arrest of the suspect was to effect an arrest that I believed was within the scope of my Task Force duties."

**The law**

Section 1442(a)(1) permits the removal of any civil or criminal action brought in state court when the defendant in the matter is:

> The United States or any agency thereof or any officer (or any person acting under that officer) of the United States or of any agency thereof, in an official or individual capacity, for or relating to any act under color of such office or on account of any right, title or authority claimed under any Act of Congress for the apprehension of punishment of criminals or the collection of revenue.

5

*Id.* Kleinert, as the party seeking to invoke this court's removal jurisdiction, bears the burden to establish the existence of federal jurisdiction over the controversy. *See Miller v. Diamond Shamrock Co.*, 275 F.3d 414, 417 (5th Cir. 2001) (federal-officer removal action); *Texas v. Carley*, 885 F. Supp. 940, 942 (W.D. Tex. 1994) (same).

Removal of a state criminal prosecution is proper when the defendant: (1) is a federal officer; (2) the prosecution is for or relating to any act under color of such office; and (3) the defendant alleges or avers a colorable federal defense. *Mesa v. California*, 489 U.S. 121, 129 (1989). Removal pursuant to Section 1442(a)(1) is interpreted broadly in favor of removal when a federal officer is seeking a federal forum. *See Willingham v. Morgan*, 395 U.S. 406, 407 (1969) ("The officer need not win his case before he can have it removed."); *see also Peterson v. Blue Cross/Blue Shied of Tex.*, 508 F.2d 55, 58 (5th Cir. 1975). "[R]emoval under [Section] 1442(a)(1) and its predecessor statutes was meant to ensure a federal forum in any case where a federal official is entitled to raise a defense arising out of his official duties." *Arizona v. Manypenny*, 451 U.S. 232, 241 (1981). Removal allows a defendant raising an immunity defense to adjudicate the validity of that defense in a federal forum. *Id.* at 242 (citing *Willingham*, 395 U.S. at 407).

For this court to maintain jurisdiction over this action, Kleinert must show that he is an individual subject to the Federal Officer Removal statute–he was a federal officer or a person acting under a federal officer; that he was acting under color of office, such that there is a causal connection, or nexus, between the conduct charged in the indictment and his asserted federal authority; and finally that he has alleged or averred a colorable federal defense. *See Jefferson Cnty., Ala. v. Acker*, 527 U.S. 423, 431 (1999); *Mesa*, 489 U.S. at 129, 139. The court addresses these three requirements in turn.

***Kleinert is a federal officer or was a person acting under a federal officer***

Courts have consistently treated local law-enforcement police officers who have been deputized as federal agents and acting as part of a federal task force as federal officers. *See United States v. Martin*, 163 F.3d 1212, 1214 (10th Cir. 1998) (local police detective deputized to participate in federal narcotics investigation was federal officer); *United States v. Torres*, 862 F.2d 1025, 1030 (3rd Cir. 1988) (same); *Colorado v. Nord*, 377 F.Supp.2d 945, 949 (D. Colo. 2005). No party has directed the court to any contrary authority and the court has found none.

On July 26, 2013, Kleinert was on a full-time assignment to the task force. The task force was created by FBI Special Agent Dennis May, who acted as its advisor. Kleinert may be said to have worked under him. He maintained his office at the Austin FBI headquarters and had been issued FBI equipment. Pursuant to his FBI special deputation, Kleinert was authorized to make arrests for any offense against the United States committed in his presence or for any felony, cognizable under the laws of the United States, if he had probable cause to believe that the person to be arrested has committed or is committing a felony. Kleinert had nationwide law-enforcement jurisdiction. The federal offense of bank robbery is committed when one, "enters or attempts to enter any bank, . . . with intent to commit in such bank, . . . any felony affecting such bank, . . . and in violation of any statute of the United States, or any larceny." *See* 18 U.S.C. § 2113(a).[3]

From the time Kleinert arrived at the bank as a participant in the task force's ongoing investigation of the morning robbery, through Kleinert's discussion with Jackson after Jackson falsely identified himself to Bostick in an attempt to enter the bank and obtain funds–which actions could come within the federal crime of bank robbery–through Jackson running away during

---

[3] There is no comparable offense under Texas law.

Jackson's discussion with Kleinert, through Kleinert's pursuit of Jackson on foot, and through Kleinert's phone call that he had shot Jackson, Kleinert was acting in his capacity as a federal-task-force member. Nothing before the court reflects that Kleinert was acting in any other capacity through this sequence of events.

As the task force and Kleinert, as an FBI specially deputized member of the task force, were authorized to investigate federal-bank-robbery offenses, the court concludes that Kleinert was a federal officer or was acting under a federal officer at all times relevant to this action on July 26, 2013.

### *Kleinert was acting under color of office*

Kleinert, as either a federal officer or one acting under a federal officer, also must have been performing an act that he was authorized by federal law to do as part of his duty. *See In re Neagle*, 135 U.S. 1, 98-99 (1890). His authority was derived from the general scope of his officer duties. *Id.*; *see also Baucom v. Martin*, 677 F.2d 1346, 1350 (11th Cir. 1982). Further, there must be a causal connection between what Kleinert did under his asserted official federal authority and the State's prosecution. *Mesa*, 489 U.S. at 131 (quoting *Maryland v. Soper*, 270 U.S. 8, 33 (1926)). That is, it must appear that the State's prosecution of Kleinert has arisen out of the acts done by him under color of federal authority and in enforcement of federal law. *Id.* With regard to causal connection, "[i]t is enough that his acts or his presence at the place in performance of his official duty constitutes the basis, though mistaken or false, of the state prosecution." *Id.*

> Federal officers and employees are not, merely because they are such, granted immunity from prosecution in state courts for crimes against state law. Congress is not to be deemed to have intended that jurisdiction to try persons accused of violating the law of a state

> should be wrested from its courts in the absence of a full disclosure
> of the facts constituting the grounds for which they claim protection.

*Colorado v. Symes*, 286 U.S. 510, 518 (1932) ("While homicide that is excusable or justified may be committed by an officer in the proper discharge of his duty, murder or other criminal killing may not."). Further, because the Federal Officer Removal statute is an incident of federal supremacy and one of its purposes is to provide a federal forum for cases where federal officials must raise defenses arising from their federal duties, the test for removal should be broader, not narrower, than the test for official immunity. *See Willingham*, 395 U.S. at 405.

The court finds that based on the evidence presented at the hearing, Kleinert went to the bank the afternoon of July 26, 2013, in his capacity as a task-force member, to further the task force's ongoing investigation of the bank's morning robbery by retrieving the bank's morning surveillance video. While at the bank, Kleinert witnessed Jackson take the following actions: Jackson walked to the front door of the closed bank, left the bank on foot, returned to the bank on foot after it appeared that he had only walked around the bank building, attempted a second time to enter the bank, and represent himself to Bostick that he was a customer of the bank, when he was not. Upon Bostick asking Kleinert to speak with Jackson, due to Jackson giving a false identity and Jackson attempting to enter the bank twice despite the sign on the door stating the bank was closed, Kleinert went out the front door of the bank, directed Jackson to sit upon a ledge, which Jackson did, and Kleinert spoke with Jackson. After a few seconds, Jackson stood up and ran away from the bank. Kleinert pursued Jackson, running after him. Based on the composite video from the bank and nearby Seton Shoal Creek Hospital, the time elapsed between Jackson's first appearance at the bank and Kleinert's call that Jackson had been shot, was approximately from 4:04:49 p.m., until 4:10:52

9

p.m., just over 6 minutes. From the time Jackson stood up from the ledge and ran away from Kleinert, until the time Kleinert's call was reported at the Austin emergency dispatch call center was approximately 3-1/2 minutes. From the time Kleinert stepped out of the bank to speak with Jackson, who had misrepresented himself to Bostick, through Kleinert's call that Jackson was shot, the court finds that Kleinert was investigating an offense against the United States committed in his presence–bank robbery, which was within his federal authority.

The State argues that nothing within Kleinert's federal duties authorized Kleinert to recklessly cause Jackson's death, therefore there can be no causal connection between Kleinert's duties as a federal officer and the conduct charged in the indictment. Further, the State argues that shooting Jackson and causing Jackson's death was contrary to, or at a minimum in conflict with, Kleinert's federal authority. Thus, argues the State, to the extent Kleinert was acting within his federal authority at the moment he shot Jackson, there was a break such that at that moment Kleinert was no longer acting within his federal authority. Therefore, concludes the State, at the time Kleinert shot Jackson, he was not acting under color of federal-officer authority.

The court finds the State's position conflates the issue of jurisdiction with the merits of Kleinert's federal-officer immunity defense. One of the most important reasons for removal jurisdiction is to have the validity of the defense of federal-officer immunity tried in federal court. *Willingham*, 395 U.S. at 407.

> The officer need not win his case before he can have it removed. In cases like this one, Congress has decided that federal officers, and indeed the Federal Government itself, require the protection of a federal forum. This policy should not be frustrated by a narrow, grudging interpretation of Section 1442(a)(1).

*Willingham*, 395 U.S. at 407. To accept the State's position essentially would obviate federal-officer removal jurisdiction in all situations where a state's indictment alleges that a federal officer wrongfully caused the death of an individual. This court does not accept the State's argument that there is no nexus between Kleinert's federal duties and the acts charged in the State's indictment. Further, as the Federal Officer Removal statute is to be interpreted broadly in favor of removal when a federal officer seeks a federal forum, the court concludes that Kleinert has met his burden and has established a nexus or causal connection exists between his federal duties and the acts charged in the State's indictment. Particularly, the court finds the causal connection or nexus between Kleinert's federal duties and the charged acts in the indictment include Kleinert's pursuit and attempt to detain Jackson to further investigate Jackson's false identification and attempt to enter the bank and obtain funds that did not belong to him, which would constitute a federal felony offense.

### *Kleinert has raised a colorable federal defense*

Finally, Kleinert must allege or aver a colorable federal defense. *See Mesa*, 489 U.S. at 129, 139. The only federal defense alleged by Kleinert is federal-officer immunity. "It was settled long ago that the federal officer, in order to secure removal, need not admit that he actually committed the charged offenses." *Willingham*, 395 U.S. at 408 (citing *Soper*, 270 U.S. at 35). With regard to determining federal-officer removal jurisdiction, no determination of "guilt or innocence arises and no determination of fact is required but it must fairly appear from the showing made that [the defendant]'s claim is not without foundation and is made in good faith." *Symes*, 286 U.S. at 519. Kleinert has satisfied these requirements. The determination of whether Kleinert will prevail on his immunity defense involves wholly different inquiries and has no connection with determining the issue of jurisdiction. *Mesa*, 489 U.S. at 129.

Based on Kleinert's notice of removal and the evidence presented at the April 9 hearing, the court concludes Kleinert has adequately alleged or averred a colorable federal defense–federal-officer immunity.

**Conclusion**

At this point in this case, the sole issue before the court is jurisdiction–whether further prosecution of the State's indictment alleging that Kleinert recklessly caused Jackson's death shall stay in this court or be remanded to state court. The court concludes that Kleinert has satisfied the requirements for this court to maintain removal jurisdiction over this action. The issue of whether Kleinert is entitled to federal-officer immunity is an issue for another day. By this order, the court does not reach the merits of the State's indictment nor any defense Kleinert may present in the course of the prosecution.

**THE COURT THEREFORE ORDERS AND DECLARES** that jurisdiction of this action lies with the United States District Court. This court shall conduct all further proceedings in this matter. The clerk's office is directed to notify the 167th Judicial District Court of Travis County, Texas, that removal of this action is permitted, that this court has jurisdiction over this cause, and that no further action shall be taken in state court. *See* 28 U.S.C. § 1455(b)(5).

Signed this __*28th*__ day of April, 2015.


_____
LEE YEAKEL
UNITED STATES DISTRICT JUDGE

12